UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARGARET A. CLARK**,                    Case Number 5:12 CV 144

      Plaintiff,                    Judge Patricia A. Gaughan

      v.                    REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

      Defendant.                    Magistrate Judge James R. Knepp II

## INTRODUCTION

Plaintiff Margaret A. Clark filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits (DIB). The district court has jurisdiction under 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB, alleging disability beginning August 23, 2007. (Tr. 11, 109). Plaintiff alleges she is disabled due to bilateral carpel tunnel syndrome (CTS), arthritis, and a learning disability. (Tr. 54). Plaintiff's claims were denied initially (Tr. 54) and on reconsideration (Tr. 61). Plaintiff requested a hearing before an administrative law judge (ALJ). (Tr. 68). After a hearing, where Plaintiff, her attorney, and a vocational expert (VE) appeared, the ALJ denied Plaintiff's claims. (Tr. 24-39; 8-20). The ALJ found Plaintiff had severe impairments but was

capable of performing light exertional work in the national economy. (Tr. 13, 18-19). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. On January 20, 2012, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

Plaintiff's allegations of disability center around complaints of pain due to bilateral carpel tunnel and back strain. However, the objective medical evidence is sparse and indicates a mild condition, at best. Concerning daily activity, Plaintiff reported she wakes up, has coffee, and watches television. (Tr. 163). She reported cooking at least two meals a day for her husband. (Tr. 163-64). Plaintiff attends to her personal hygiene independently, lives independently, and performs light housework, such as vacuuming and folding clothes. (Tr. 163-64).  Plaintiff also grocery shops and manages her own finances. (Tr. 165-66). She testified she had CTS in both hands but refused to get surgery because she is "scared [she is] going to lose [her] hands." (Tr. 29). Plaintiff said she is being treated for CTS and her physician instructs her to take Advil, which helps her pain. (Tr. 30, 32).

Plaintiff completed ninth grade and was 53 years old at the time of the ALJ hearing. (Tr. 27, 140).  She worked as a line-worker in a factory putting together boxes for over 30 years, but stopped working because of her condition in 2007. (Tr. 137, 144). However, Plaintiff later testified she secured a part-time laborer position as a line-worker through a temp agency in 2009. (Tr. 29).

### *Medical Evidence*

On October 3, 2007, Plaintiff presented to Dr. Deepti Parmar at Kaiser Permanente complaining of arm pain. (Tr. 186). Plaintiff said her arm pain had progressively worsened within the last ten  years. (Tr. 186). Plaintiff's hand movement was normal and exhibited no signs of

swelling. (Tr. 187). Plaintiff tested negative for Tinel's sign. (Tr. 187). X-rays revealed mild joint space narrowing with mild degenerative changes. (Tr. 189).

On January 11, 2008, Plaintiff went to Dr. Karla Madalin for an electromyogram and nerve conduction study. (Tr. 194). Plaintiff refused to have her right hand tested. (Tr. 195). It was later noted full testing was not done at Plaintiff's request. (Tr. 195). Dr. Madalin opined CTS in Plaintiff's left hand was mild in degree. (Tr. 195).

On January 31, 2008, Plaintiff returned to Kaiser Permanente complaining of right hand numbness and saw Dr. Stephen Cheng in the orthopedic department. (Tr. 193). On examination, Plaintiff had full range of motion in both hands and wrists. (Tr. 193). She was negative for Tinel's sign, but positive for Phalen's sign, which indicates numbness. (Tr. 193). Plaintiff's stability was normal and she was in no acute distress. (Tr. 193). Dr. Cheng diagnosed Plaintiff with CTS and discussed the risks and benefits of surgery to repair CTS. (Tr. 193).

On April 11, 2008, Plaintiff went to Dr. Parmar to review lab results. (Tr. 190). She was advised to cut down on carbohydrates, walk daily, and maintain a low sodium diet. (Tr. 192). Plaintiff's carpel tunnel or back pain was not documented to have been discussed.

***Opinion Evidence***

On May 14, 2008, Plaintiff saw Dr. E.M. Bard for a psychological examination. (Tr. 215). She reported a history of alcohol and drug abuse. (Tr. 216). Plaintiff also said she had been arrested approximately five times for involuntary manslaughter, felonious assaults, and driving under the influence. (Tr. 216). Plaintiff described her disability as mainly centered on CTS. (Tr. 215). She said she was able to operate all kitchen appliances and "prepare fried chicken". (Tr. 217). Plaintiff said she manages her own finances and grocery shops on a regular basis. (Tr. 217).    According to

Plaintiff, her hobbies are chess, playing cards, gambling, and spending time with friends. (Tr. 217). She said she walks for exercise and reads the newspaper daily. (Tr. 218). Plaintiff claimed she could not find a job because of her criminal record, not because of her learning disability. (Tr. 218). Plaintiff reported she had been sober for over a year, which, in her words, meant "she's only used alcohol, no street drugs." (Tr. 218).

The Wechsler Adult Intelligence Scale (WAIS-III) indicated Plaintiff was performing under the borderline classification range with regard to her overall intellectual ability. (Tr. 218). However, no significant difference was noted between her verbal and nonverbal reasoning skills. (Tr. 218). Plaintiff performed significantly below average in areas involving vocabulary knowledge, abstract language skills, long-term factual recall, and auditory comprehension. (Tr. 218-19).

Dr. Bard concluded Plaintiff's insight and judgment were below average as it relates to her ability to demonstrate adequate problem solving skills. (Tr. 214). Dr. Bard assigned Plaintiff an overall GAF score of 64, indicating mild symptom classification. (Tr. 219). Dr. Bard opined Plaintiff was mildly limited in her ability to relate to others, understand, remember, and follow instructions, and withstand stress and pressure associated with day-to-day work. (Tr. 218-19). She was not limited in her ability maintain attention and perform repetitive tasks. (Tr. 219).

On June 10, 2008, Dr. Paul A. Steurer evaluated Plaintiff's physical condition. (Tr. 231). On examination, Plaintiff was well oriented to person, place, and time and ambulated normally. (Tr. 232). Straight leg raises caused "a little" back pain and tenderness to palpitation across the lumbar spine. (Tr. 232). X-rays revealed no severe degenerative disc disease. (Tr. 232). Dr. Steurer diagnosed Plaintiff with CTS, tendinitis, bilateral patellofemoral syndrome, and lumbar strain with

mild arthritis. (Tr. 232). Dr. Steurer concluded Plaintiff would have difficulty performing repetitive tasks with her hands or heavy repetitive bending or lifting. (Tr. 233).

On June 14, 2008, Dr. Joan Williams evaluated Plaintiff's mental residual functional capacity (RFC) and concluded Plaintiff is moderately limited in her abilities to remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; complete a normal workweek without interruption from psychologically based symptoms; accept instructions or respond to criticism appropriately from supervisors; interact appropriately with the general public; and maintain social functioning. (Tr. 251-52).  Plaintiff was not limited in the majority of categories concerning understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (Tr. 251-52). Dr. Williams found Plaintiff only partially credible concerning her alcohol and drug abuse. (Tr. 253). Dr. Williams concluded Plaintiff "does have some limitations but [] significant functional capacity remains. . . . [and] [s]he can adapt to a setting in which duties are routine and predictable. " (Tr. 253).

On August 4, 2008, Dr. Gerald Klyop assessed Plaintiff's physical RFC. (Tr. 255). Dr. Klyop concluded Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently. (Tr. 256). Plaintiff can stand and/or walk and sit for about six hours in an eight hour workday. (Tr. 256). Plaintiff has an unlimited ability to push and/or pull. (Tr. 256). Plaintiff's postural activity is not restricted, except she cannot climb ladders, ropes, or scaffolds. (Tr. 257). Plaintiff is limited in her ability to use her hands for repetitive tasks or any repetitive lifting or bending. (Tr. 261).

*VE Testimony*

During the administrative hearing, the ALJ posed the following hypothetical person to the VE: an individual of the same age, educational background, and work experience as Plaintiff, but also having limitations – including the ability to sit and stand at will; frequently lift and/or carry objects weighing up to ten pounds, occasionally twenty pounds; avoiding heights, climbing, and moving dangerous equipment; no repetitive finger movements or repetitive overhead reaching; and unskilled, simple, one to two step instructions. (Tr. 36-37). The VE opined this person could not perform Plaintiff's past work, but could perform unskilled positions that existed in the national economy, such as ticket taker, weigher in shipping and receiving, and order caller according to the Dictionary of Occupational Titles (DOT). (Tr. 37).

Plaintiff's counsel questioned the VE about the exertional level of the hypothetical person, which the VE indicated was "light". (Tr. 37). Plaintiff's counsel asked if the exertional level would change if the hypothetical person chose to sit for six hours out of the eight workday, the VE responded such a limitation would change the exertional level to a sedentary level. (Tr. 38).

*ALJ Decision*

On September 15, 2010, the ALJ issued a decision finding Plaintiff not disabled. The ALJ found Plaintiff had the following severe impairments: bilateral CTS; tendinitis, right shoulder and elbow; obesity; and borderline intellectual functioning (BIF). (Tr. 13). The ALJ concluded Plaintiff has the RFC to lift and carry twenty pounds occasionally; lift and carry ten pounds frequently; and perform work that allows for a sit/stand at will option in an eight hour work day. Plaintiff cannot perform work that requires climbing or exposure to heights or moving and dangerous machinery;

cannot do repetitive finger movements or repetitive overhead reaching; and is limited to unskilled work requiring no more than one and two step directions. (Tr. 16).

The ALJ based his opinion on conservative treatment – Advil for pain – and minimal medical objective findings. (Tr. 17). Further, the ALJ concluded Plaintiff's daily activities are not as limited as Plaintiff claims. (Tr. 17). Based on VE testimony, the ALJ concluded Plaintiff has the ability to perform a limited range of light work. (Tr. 19). The ALJ found Plaintiff could not perform past relevant work but she could perform work that existed in the national economy, including ticket taker, order caller,  and a shipping and receiving weigher according to the DOT. (Tr. 19).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

S<small>TANDARD FOR</small> D<small>ISABILITY</small>

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy.  *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets

8

the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 416.929. An ALJ must also consider and weigh medical opinions. *Id.* § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *1.

The ALJ concluded Plaintiff could perform light work with limitations, including a sit/stand at will option. The VE confirmed the exertional level would change to sedentary if the Plaintiff chose to sit for six hours a day. Plaintiff argues the ALJ erred by concluding Plaintiff could perform work at a light exertional level with limitations as opposed to a sedentary exertional level because she would likely sit for six hours a day. There is no basis for Plaintiff's assertion.

Plaintiff's treatment history is minimal and reflects primarily complaints and diagnoses of bilateral CTS, not cervical or back problems inhibiting her ability to walk or stand. Plaintiff visited Dr. Parmar three times between 2007 and 2008. Dr. Parmar never indicated Plaintiff had problems ambulating, nor did he opine Plaintiff must sit for extended periods of time due to her impairments. In fact, Dr. Parmar instructed Plaintiff to walk daily to improve her conditions (*See* Tr. 218), and Plaintiff followed those instructions by walking daily (*See* Tr. 192). Further, x-rays of Plaintiff's back did not reveal degenerative disc disease (Tr. 232) and a regular dose of Advil  relieves her pain

9

(Tr. 31-31). Plaintiff attempts to support her contention in this regard with her own testimony, declaring she can only stand for about an hour at a time. However, Plaintiff does not point to any objective medical finding supporting such a restriction, nor does the Court's review of the records demonstrate one.

The ALJ did not err because the hypothetical question accurately reflected Plaintiff's RFC and the ALJ properly relied on VE testimony to find Plaintiff could perform light exertional work with limitations.

CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying DIB benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).